# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 6, 2025

Lyle W. Cayce
Clerk

No. 24-50405
Summary Calendar

———————

Doctor Jack Wilson Stamps, Jr.,

*Plaintiff—Appellant*,

*versus*

University of Texas System; University of Texas at Austin; Doreen Lorenzo, *Assistant Dean of the College of Fine Arts and Director of the School of Design and Creative Technologies, in her individual and official capacities*; Douglas Dempster, *Former Dean of COFA and current Professor at UT Austin, in his individual and official capacities*; Michael Baker, *Chair of the Department of Arts and Entertainment Technologies at UT Austin, in his individual and official capacities*; David Cohen,

*Defendants—Appellees*.

———————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:23-CV-1520

———————

Before King, Southwick, and Engelhardt, *Circuit Judges*.

Per Curiam:[*]

———————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-50405

Plaintiff-Appellant Dr. Jack Wilson Stamps, Jr., sued his former employer the University of Texas at Austin.  The district court, after determining that a valid settlement agreement barred the claims, granted the University's motion to dismiss.  We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

Dr. Jack Stamps was a professor at UT Austin from 2015 to 2020.  In March 2019, Stamps was promoted to Associate Professor of Practice, and one month later, he reported misconduct of administrators at UT Austin.  Soon thereafter, UT Austin informed Stamps his employment contract would not be renewed.  In December 2020, Stamps sued UT Austin in the United States District Court for the Western District of Texas.  A magistrate judge's mediation resulted in a Settlement Agreement that was executed in May 2023.  The parties agreed to a mutual release of claims arising from Stamps's employment with UT Austin.  After entering the Settlement Agreement, Stamps made an open records request to UT Austin.  The records revealed that Stamps had been the subject of an internal investigation by UT Austin's Behavioral Risk Assessment Committee ("BRAC").  The records, Stamps asserts, included "false and defamatory statements" and "baseless, damaging remarks."  In December 2023, Stamps, acting *pro se*, filed the current suit in the same court as his first suit.

In his third amended complaint,[1] Stamps alleged the UT System, UT Austin, and employees and administrators Douglas Dempster, Doreen Lorenzo, David Cohen, and Michael Baker, made false statements about Stamps and communicated these statements to "multiple parties," resulting in defamation and libel.  Stamps also alleged that the UT System and UT

---

[1] The complaint is labeled "Second Amended Complaint and Jury Demand," but it was his third amended complaint.

2

Austin, through its BRAC investigation, violated his due process rights. Stamps claimed that he "certainly would not have signed the Release Agreement" had he known about the BRAC investigation. Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants argued that Stamps's claims related to his employment, so they were barred by the Settlement Agreement. Stamps countered that he was "completely broke," "severely depressed," and "unemployable in academia and within the UT System" when he signed the Settlement Agreement. He additionally argued "[t]he UT System and UT Austin knew of the existence of the BRAC at the time of the [S]ettlement [A]greement" and were aware he was being investigated. As a result, Stamps argued "the [S]ettlement [A]greement should be regarded as flawed, overturned, and not applied to this matter."

The district court liberally construed the "argument to mean the Settlement Agreement was not valid and enforceable because [Stamps] did not know of the existing causes of action he could have raised in the previous lawsuit." The court found the Settlement Agreement to be valid and enforceable, referring to Stamps's assistance of counsel when negotiating the Settlement Agreement and the "clear and unambiguous release language, to which Stamps knowingly agreed." The court found the Settlement Agreement encompassed his claims because Stamps's causes of action arose from his employment with UT Austin. Accordingly, the district court granted Defendants' motion to dismiss. Stamps timely appealed.

## DISCUSSION

Stamps's *pro se* appellate brief asserts the district court erred in multiple respects. Most of his brief, however, addresses the merits of his claims against Defendants, which are not properly before us. We address only the issue of whether the district court erred in finding the Settlement

Agreement enforceable and inclusive of the current claims. On that point, Stamps argues the district court erred by its use of a "more stringent application of the law," violating his due process rights. Stamps also argues the Settlement Agreement was entered into under "fraud, misrepresentation, or concealment, thus rendering the agreement unenforceable," and the Settlement Agreement was unconscionable. We liberally construe Stamps's pleadings because he is *pro se*. *Collins v. Dallas Leadership Found.*, 77 F.4th 327, 330 (5th Cir. 2023).

We review the grant of a Rule 12(b)(6) motion *de novo*. *McKay v. LaCroix*, 117 F.4th 741, 746 (5th Cir. 2024). Under this *de novo* review, we "accept all facts in the complaint as true, but do not accept conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Molzan v. Bellagreen Holdings, L.L.C.*, 112 F.4th 323, 331 (5th Cir. 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When a complaint includes enough facts to state a claim to relief that is plausible on its face, this court assumes the veracity of those claims and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). We consider any "documents incorporated into the complaint by reference." *Petrobras Am., Inc. v. Samsung Heavy Indus. Co.*, 9 F.4th 247, 253 (5th Cir. 2021).

Stamps referenced the Settlement Agreement in his third amended complaint and Defendants attached it to their motion to dismiss, so we may consider it. *See id.* Although federal courts have inherent authority to enforce settlement agreements, "the construction and enforcement of settlement agreements is governed by principles of state law applicable to contracts generally." *Lee v. Hunt*, 631 F.2d 1171, 1173–74 (5th Cir. 1980). "[S]ettlement agreements, when fairly arrived at and properly entered into,

are generally viewed as binding, final and as conclusive of the rights of the parties as is a judgment entered by the court." *Rodriguez v. VIA Metro. Transit Sys.*, 802 F.2d 126, 128 (5th Cir. 1986). Accordingly, we determine whether the Agreement is enforceable and then proceed to determine what relief, if any, is proper.

### I.    *Validity of the Settlement Agreement*

Under the principles of contract law, a settlement agreement may be set aside if it is the result of fraud. *In re Deepwater Horizon*, 786 F.3d 344, 362 (5th Cir. 2015).

According to Stamps, the district court erred in finding the Settlement Agreement barred his claims. Stamps argues on appeal that the Settlement Agreement is unenforceable because he was unaware of the BRAC investigation, constituting fraud, misrepresentation, or concealment by UT Austin, and because the Agreement is unconscionable. Defendants contend that Stamps failed to challenge the Settlement Agreement's enforceability on those grounds in the trial court, so those arguments are forfeited. Stamps disagrees and argues he "consistently raised the issue of concealment of the BRAC investigation in his filings," which prevented him from making an informed decision, and the argument should be preserved for appeal.

Stamps did not raise these claims before the district court, and they cannot be asserted for the first time on appeal. *Greenberg v. Crossroads Sys., Inc.*, 364 F.3d 657, 669 (5th Cir. 2004). Although we construe briefs of *pro se* litigants liberally, they are still subject to the rules of waiver and forfeiture and may not press issues "not presented to the district court for its consideration in ruling on the motion." *Grogan v. Kumar*, 873 F.3d 273, 277 (5th Cir. 2017). Stamps does not refer to any place in the record where he raised the claims upon which he hopes to have the Settlement Agreement rendered unenforceable. The district court remarked on this absence, finding "he entered the Settlement Agreement and does not allege or present any

direct or specific argument that it is not valid or enforceable." Instead, the record shows the district court liberally construed Stamps's arguments "to mean the Settlement Agreement was not valid and enforceable because he did not know of the existing causes of action he could have raised in the previous lawsuit." We agree.

Stamps's complaint primarily argues that he would not have signed the Settlement Agreement if he was aware of the BRAC investigation. Even when construed liberally, Stamps did not allege a material, false representation as is required to support a claim for misrepresentation, concealment, or fraud. *See Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001) (setting out the elements of fraud under Texas law). Stamps's complaint alleges that UT Austin refused his requests for documents that specify BRAC procedures. Stamps, however, did not allege that he asked for and was denied those documents prior to entering the Settlement Agreement, or that he relied on the absence of such an investigation as motivation for entering the Agreement. He did not allege facts to support the elements of misrepresentation, concealment, or fraud, so Stamps forfeited these arguments on appeal.

Similarly, Stamps's complaint is devoid of facts supporting unconscionability. Unconscionability requires a plaintiff to show a contract or clause in a contract "is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *In re Poly-America, L.P.*, 262 S.W.3d 337, 348 (Tex. 2008) (quoting *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex. 2001)). Stamps entered the Settlement Agreement knowingly and voluntarily. He was represented by counsel during litigation and the settlement process and affirmed that he fully understood the terms and conditions of the Agreement. Stamps also represented that the Settlement Agreement was reasonable, and "supported by good, valid and adequate consideration." Stamps's did not argue that the

Settlement Agreement was "one-sided" to the district court, so the argument was forfeited. We now turn to the validity of the Settlement Agreement.

When a settlement agreement is unambiguous, "the court will construe the contract as a matter of law." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). Neither party argues the Settlement Agreement is ambiguous. The district court found the Agreement was unambiguous, and we agree. A release of a claim or theory of liability extinguishes that claim or cause of action, "and is an absolute bar to any right of action on the released matter." *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993). Any claim not clearly covered by the release is not discharged. *Victoria Bank & Tr. Co. v. Brady*, 811 S.W.2d 931, 938 (Tex. 1991). It is not, however, necessary for parties to "anticipate and identify each potential cause of action," and "a valid release may encompass unknown claims and damages that develop in the future." *Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburg*, 20 S.W.3d 692, 698 (Tex. 2000). The Settlement Agreement includes such claims.

The parties' Settlement Agreement defined "claims" in the following way:

> all theories of liability or recovery of whatever nature, whether known or unknown, that were or could have been the subject of any complaint or charge filed or proceeding initiated with any court or other governmental agency or body of the United States of America or any other country, or any state or local jurisdiction within the United States of America or any other country, or of any lawsuit or similar proceeding and *which relate to or arise from Stamps' employment with UT Austin or any actions or inactions by UT Austin, as of the Effective Date, whether known or unknown to Stamps at the time of execution of this Agreement.*

Under the plain language of the Settlement Agreement, both Stamps and UT Austin agreed to "mutually release each other from all Claims and Damages arising from Stamps'[s] employment with UT Austin or any actions or inactions by UT *existing as of the Effective Date*." This included "Stamps releasing UT and its employees from all Claims and Damages that have been, could have been, may be, or could be alleged or asserted now by Stamps." Further, the Settlement Agreement contained six "Representation and Warranties" whereby Stamps warranted he was "adequately represented by competent counsel," relied on his "own judgment and the advice of [his] own attorneys," that he was not "induced to sign or execute [the] Agreement by promises, agreements, or representations not expressly stated herein," the "consent to [the] Agreement was not procured, obtained, or induced by improper conduct or undue influence," and that the Agreement was "fair, reasonable, and supported by good, valid and adequate consideration." Based on the clear language in the Settlement Agreement, which Stamps, with counsel, knowingly and voluntarily entered, we conclude the release of claims is valid and enforceable.

Next, we determine whether the Settlement Agreement encompasses the claims asserted.

## II.    *Encompassed Claims*

The Settlement Agreement's release included "all theories of liability" that related to or arose from Stamps's employment "as of the Effective Date, whether known or unknown to Stamps at the time of execution." "Effective Date" is defined in the Settlement Agreement as "the day Stamps signs the Agreement." Stamps signed the Settlement Agreement on April 30, 2023. The acts complained of by Stamps, including the BRAC investigation and the communications by various UT personnel, undoubtedly arose from his employment at UT Austin and before the

8

Effective Date.  Stamps's response to Defendants' motion to dismiss details the statements he claims were libelous and defamatory.  The statements were made in various emails and communications that Stamps included as exhibits.  Those exhibits further show that the claims arose some three years before the Effective Date because each email was sent in 2020.

Finally, the Settlement Agreement defined "UT" as "The University of Texas at Austin; The University of Texas System; the Board of Regents of The University of Texas System; and each of the aforementioned entities' affiliated representatives, officers or directors, employees, agents, principals, insurers, and attorneys."  This definition encompasses all named Defendants in his action before the district court.  That Stamps did not discover the causes of action until after he entered the Settlement Agreement does not change that they arose from his employment and existed at the time of and before the execution of the Settlement Agreement.   The Settlement Agreement is valid and enforceable and encompasses the current causes of action against Defendants.

### III.    *Motion to Appoint Counsel*

Stamps requested that this court appoint counsel to assist with his appeal.  Although this court may appoint an attorney to represent a litigant in federal court, there is no right to an appointment in a civil rights case.  28 U.S.C. § 1915(e)(1); *Baranowski v. Hart*, 486 F.3d 112, 126 (5th Cir. 2007).  Instead, federal courts consider various factors to determine whether the appointment would be proper.  *Baranowski*, 486 F.3d at 126.  These factors include (1) "the type and complexity of the case," (2) "the litigant's ability to investigate and present the case," and (3) "the level of skill required to present the evidence."  *Id.* (quoting *Castro Romero v. Becken*, 256 F.3d 349, 354 (5th Cir. 2001)).  Federal courts also consider "the likelihood that appointment will benefit the petitioner, the court, and the defendants by

shortening the trial and assisting in just determination." *Naranjo v. Thompson*, 809 F.3d 793, 799 (5th Cir. 2015) (quoting *Parker v. Carpenter*, 978 F.2d 190, 193 (5th Cir. 1992)).

The controlling issue is not complex. Stamps's claims against the named Defendants were released in the Settlement Agreement. Stamps has already shown he is capable of investigating and presenting his case, including the use of case law. Because the Settlement Agreement is valid, enforceable, and encompasses Stamps's claims, appointment of counsel would not benefit Stamps, this court, or Defendants. Stamps's motion to appoint counsel is DENIED. The judgment of the district court is AFFIRMED.